UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN GRAPHICS INSTITUTE, INC. and CHRISTOPHER SMITH, <br>                      Plaintiffs, <br><br> v. <br><br> ACQUIRED LEARNING, INC., SYSTEMS SOLUTION, INC., JUDEANN STIPE, DEAN NOVOSAT, CLARK EDWARDS and RICHARD WEIN, <br>                    Defendants. | C.A. No. 04 12611 JLT |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs ask this Court to find Defendants liable for copyright infringement for the use of portions of certain computer training course descriptions in which Plaintiffs now claim copyright ownership. What Plaintiffs omit from their factual presentation, however, is that these same descriptions, in almost verbatim form, *have appeared on defendant SSI's website since 1997*. Moreover, those descriptions were accompanied on SSI's website with a copyright (©) notice designating them as the intellectual property of SSI, whereas similar course descriptions that appeared on Plaintiff's website were never accompanied by any indication of copyright ownership. The evidence will show that SSI, and not Plaintiffs, are the proper owners of the course descriptions in dispute.[1] At the very least, there is a disputed question of fact as to the rightful owner of the disputed language. As such, Plaintiffs' motion for partial summary judgment must be denied.

---

[1] Other than documents turned over with the parties Initial Disclosures, no discovery of the parties has occurred. Plaintiffs' motion is therefore premature and should be denied for that reason as well. See Fed. R. Civ. P. 56(f).

Plaintiffs' summary judgment motion must be dismissed for other independent reasons. The record evidence shows that Plaintiff American Graphics Institute, Inc. ("AGI") had no role in the original creation of the disputed course description content. Rather, it was a separate company owned by Plaintiff Christopher Smith – called CyberSolutions, Inc. – that collaborated with SSI in the mid-1990s to develop the disputed content. It is thus unclear how or why AGI would apply for copyright registration in 2004 for content that it claims first use of in 2002 or 2003. (See Exs. A and B to Complaint.) For that reason alone, AGI cannot claim a copyright in the disputed work.

Even if SSI cannot prove a direct ownership in the course descriptions, the law dictates that it had, at the very least, an implied non-exclusive license. CyberSolutions, and later AGI, not only did not object to SSI using the disputed content, they encouraged SSI to do so. That behavior constitutes the grant of an implied non-exclusive license.

The undisputed facts also show that Plaintiffs brought this action beyond the three-year statute of limitations under the Copyright Act. Since at least 1997, Plaintiffs knew that SSI had been using the disputed course description language (with an SSI © designation). To the extent that Plaintiffs might ever have had a basis to maintain a claim for copyright infringement, they had to bring any such action by 2000. Instead, Plaintiffs sat on their hands for almost seven (7) years, until December 2004, before applying for copyright protection, and then bringing suit. Plaintiffs' copyright claims are thus barred by the statute of limitations, and their motion for partial summary judgment must be denied. For the same reasons, Defendants' cross-motion for summary judgment should be granted.

For similar reasons, Plaintiffs are barred from maintaining their current claims under the doctrines of waiver, laches, and equitable estoppel. From 1997 through 2004, Plaintiffs worked

with SSI, visited its website, and even suggested edits to the allegedly copyrighted information posted on SSI's website. Not once did Plaintiffs assert copyright ownership in the disputed course description language, nor did they ever complain that SSI's use of the language was somehow improper. On the contrary, Plaintiffs proceeded as if the language belonged to SSI, which SSI and others believed to be the case. Based on that assumption, in 2004, SSI allowed Acquired Learning to copy the language from its website, for use on its own website. It was not until seven (7) years later, when SSI began doing business with one of AGI's former employees, that Plaintiffs suddenly claimed that they had copyright ownership in the language. By sitting on their claimed rights, and encouraging SSI'S continued use of the disputed language during that time, Plaintiffs have foreclosed their ability to sue for infringement. Summary judgment should thus enter in favor of Defendants.

Even if the Court cannot rule as a matter of law on issues of statute of limitations and the other equitable defenses, other portions of Plaintiffs' claims are subject to dismissal, as a matter of law. First, Plaintiffs cannot assert a claim for statutory damages or attorneys' fees. Plaintiffs acknowledge that they did not even seek copyright registration of the AGI website until November 2004, and that they only applied for copyright registration of the course content in dispute on December 8, 2004, less than a week before filing suit. The Copyright Act does not allow for statutory fees damages or attorneys' fees because the alleged infringement took place before the copyright was registered. Plaintiffs' claim for statutory damages and attorneys' fees must therefore be dismissed.

Second, nowhere in its summary judgment do Plaintiffs support a claim of copyright infringement against Defendant Judeann Stipe. Stipe is the one Defendant who does not have an ownership interest and who does not maintain an officer position with either corporate defendant.

It is understandable, therefore, why Plaintiffs did not even mention Stipe in their discussion of vicarious liability. The copyright claim, and the related unfair competition claim, against Stipe must be dismissed.

Finally, as a matter of law, Plaintiffs' claim of common law unfair competition must be dismissed because it is preempted under the Copyright Act. Plaintiffs' unfair competition claim is "fundamentally equivalent" to their copyright claim. Federal copyright law thus requires that the unfair competition claim be dismissed, as preempted.

## STATEMENT OF FACTS

Pursuant to Local Rule 56.1, Defendants hereby incorporate by reference their L.R. 56.1 Statement of Material Facts In Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment ("SOF"), submitted herewith, and state as follows:

Through a series of half-truths and misleading omissions, Plaintiffs weave a tale of copyright infringement by an upstart competitor whose principals were former colleagues of Plaintiff Christopher Smith ("Smith"). Plaintiffs do not tell the real story.

It begins in 1996. Around that time, Defendant Systems Solution, Inc. ("SSI"), a well-established technology services company, realized that it could better serve its consulting and equipment sales clients by helping them obtain training in common electronic publishing software applications. To help it accomplish this goal, SSI hired CyberSolutions, Inc. ("CyberSolutions"), a former business venture of Smith, as an independent contractor to provide training services to SSI's existing clients. [SOF, ¶ 1.]

Under the 1996 Agreement, CyberSolutions agreed to offer training courses to SSI's clients at SSI's well-equipped training facility, and SSI agreed to market and promote Cyber's

services.  The 1996 Agreement was signed by Plaintiff Smith on behalf of CyberSolutions and

by Defendant Richard Wein ("Wein") on behalf of SSI.  [SOF, ¶ 2.]

Along with the 1996 Agreement, SSI and CyberSolutions signed an April 15, 1996

Confidentiality Agreement and a May 13, 1996 Agreement Not to Compete.  Both of those

agreements were signed by Christopher Smith, on behalf of CyberSolutions.  [SOF, ¶ 3.]

Pursuant to Confidential Agreement, CyberSolutions agreed to protect SSI's confidential

information, which expressly included "computer programs and listings."  Notably, the

Confidentiality Agreement states: "CyberSolutions acknowledges that, as between SSI and

CyberSolutions, the Confidential Information ***and all related <u>copyrights</u> and other intellectual***

***property rights, are (and at all times will be) the property of SSI***, even if suggestions,

comments, and/or ideas made by CyberSolutions are incorporated into the Confidential

Information or related materials during the period of this Agreement."  [SOF, ¶ 4 (emphasis

added).]

Pursuant to the 1996 Agreement and related contracts, SSI began to market and promote

education classes to its extensive roster of clients.  To that end, SSI created print materials

describing its courses.  [SOF, ¶ 5.]

By 1997, SSI had begun electronically publishing the course descriptions for its new

software training classes on its website.  These class descriptions – which bear a copyright notice

attributing ownership to SSI – were substantially similar (if not identical) to those that Plaintiffs

now claim Defendants have copied from AGI's 2002 website.  A historical analysis of SSI's

website shows that these ***1997 class descriptions bearing a copyright designation were in use***

***on the SSI website continuously up until late 2004*** (with minor modifications and a temporary

period of inactivity), when SSI learned of this lawsuit and voluntarily removed the suddenly

- 5 -

disputed content from its website.  SSI's website at that time also reflected that it had partnered with CyberSolutions to market training courses.  [SOF, ¶ 6.]

For some time, the relationship between CyberSolutions and SSI was mutually beneficial. SSI was able to offer its customers the training they needed.  CyberSolutions, for its part, profited greatly, gaining access to SSI's customer lists, enjoying free use of SSI's training facility and equipment, and earning tens of thousands of dollars in training fees and commissions.  [SOF, ¶ 7.]

At some point, Plaintiff American Graphics Institute, Inc. ("AGI") assumed CyberSolutions' role as contractor to SSI.  Importantly, AGI was not the party with whom SSI collaborated on the disputed course descriptions; rather, it was CyberSolutions.  However, AGI (not CyberSolutions) is currently pursuing claims for copyright infringement.  In the copyright applications attached to the Complaint, AGI acknowledges origination and first use as being as late as 2002 or 2003, which is long after SSI was using the course descriptions in conjunction with CyberSolutions.  [SOF, ¶ 8.]

Over time, SSI and AGI continued to work together, but as SSI's education department grew, the nature of its relationship with AGI became more reciprocal.  SSI developed an independent education program, offering more creative, complex courses than the basic software trainings AGI could provide.  These courses were developed in-house by SSI's education department and advertised on SSI's website alongside its existing basic course schedule.  The entire website continued to bear an SSI copyright notice.  [SOF, ¶ 9.]

In or about May 2002, SSI and AGI entered into an agreement whereby SSI would work with AGI to identify training needs, and they agreed to "work together" to develop courses to meet those needs.  Both companies helped to sell the other's training products, listing all

noncompetitive courses offered by both parties in their marketing materials. During this time, and particularly in 2000-2001, SSI and AGI communicated on a daily basis, sometimes even more frequently, about their joint marketing efforts, including the course listings on the SSI website. Plaintiff Smith was personally involved in these communications, occasionally even making suggestions to SSI about changes it should make to the AGI class offerings on its website. [SOF, ¶ 10.]

At no time did anyone from AGI suggest that any content on the SSI website belonged in any way to AGI or infringed any AGI copyright or that there were any restrictions of any kind on SSI's ability to use such content for whatever purpose it chose. Defendants dispute that Plaintiffs have any copyright in the disputed course descriptions or that Plaintiffs can properly maintain a copyright claim against them. [SOF ¶ 11.]

By September 2003, the level of activity in SSI's education branch had diminished significantly, and it decided to leave the training business. Shortly thereafter, SSI removed the "Education" portion of its website from public view. SSI took this action not at the request of AGI, which was entirely silent on the subject of the use of any joint marketing materials, but because there was no longer any need for SSI to advertise courses. [SOF, ¶ 12.]

A year later, in the Summer of 2004, Defendants Clark Edwards and Dean Novosat contacted Wein and told him about a new software training company they were thinking about starting, Acquired Learning, Inc. ("Acquired Learning"). They asked Wein whether SSI might be interested in partnering with them to provide training classes to SSI customers and others in SSI's then-unused training facility. Wein agreed. [SOF, ¶ 13.]

As the three discussed marketing efforts, Wein explained to Edwards and Novosat that SSI already had class listings for most of the basic courses the new venture would offer. He told

them the listings were in the inactive "Education" tab of the SSI website and authorized them to use any or all of that content to develop the Acquired Learning website. Because the material had appeared on the SSI website for so many years, no one believed, or had any reason to believe, that AGI claimed an ownership interest in the disputed course descriptions. [SOF, ¶ 14.]

In or about August 2004, Novosat developed a website for Acquired Learning using the authorized materials from the Education section of the SSI website. This website went public at http://www.acquiredlearning.com on or about September 2004. Shortly thereafter, in October 2004, SSI reactivated its Education tab and modified the content to reflect the fact that Acquired Learning would be conducting the trainings. [SOF, ¶ 15.]

In early October 2004, shortly after the Acquired Learning website and new SSI Education tab had gone live, SSI sent out an announcement about the collaboration to its email contact list. The announcement explained that Acquired Learning would be SSI's new training partner. It went on to list several of the teachers who would be conducting the trainings; several were current and former AGI trainers. Finally, the email announced that Judeann Stipe, AGI's former sales representative, would be working for Acquired Learning. [SOF, ¶ 16.]

Christopher Smith and his wife, Jennifer, did not take this news well. Jennifer, an officer of AGI, expressed to Stipe that she was "in shock" and felt like she had "been punched in the gut." She warned Stipe that "this is a small industry" and vowed to "do [her] best to let everyone know my disappointment on this matter." She also warned Stipe, "Good luck getting through Chris with this one…I won't even be his voice of reason anymore." [SOF, ¶ 17.]

Christopher Smith put action to his wife's words. He tried to break up the new venture by suggesting to SSI that Novosat was a competitor and therefore an inappropriate business partner. He contacted trainers who were listed in the SSI/Acquired Learning announcement and

threatened to withdraw business from them if they did not remove their names from the Acquired

Learning website.  He even told one prospective Acquired Learning trainer, *a propos* of nothing,

that Judeann had filed a personal bankruptcy petition, commenting "When banks, retailers, and

lenders are forced to write-off huge amounts of credit and other loans – as they were forced to do

with Judeann – it impacts us all."  [SOF, ¶ 18.]

　　　And then, of course, Smith found a lawyer, filed copyright registration applications for

the AGI website, and brought this lawsuit, without warning or a cease and desist letter.  Indeed,

the first that any Defendant learned of Plaintiffs' claim of copyright ownership was when they

learned that AGI and Smith had a filed a lawsuit for copyright infringement.  [SOF, ¶ 19.]

　　　After learning that the Complaint had been filed, Novosat, in an abundance of caution,

stayed up all night that night editing the Acquired Learning website to replace any potentially

offending text with different language.  SSI soon followed, also out of a desire to avoid conflict,

despite its firm belief that the content was its own.  None of the Defendants has any reason,

desire, or intent to use any of the disputed content in the future, as they do not see any intrinsic

value in the course descriptions themselves.  [SOF, ¶ 20.]

　　　Nonetheless, Plaintiffs continue this lawsuit, which is clearly fueled not by Plaintiffs'

need to protect their purported intellectual property, but rather by Plaintiff Christopher Smith's

hostility and vengeance towards his former colleagues.  Plaintiffs' copyright claims lack any

legal or factual basis.  Defendants are therefore entitled to summary judgment.

**ARGUMENT**

A.    **There are disputed material facts as to whether Plaintiffs can maintain an action for copyright infringement.**

    1.    **SSI is the owner of the disputed content.**

In 1996, SSI hired CyberSolutions as an independent contractor to provide training services to SSI's clients at SSI's training facility. In fulfilling that contract, at SSI's request and in consideration of the benefits provided by SSI, CyberSolutions provided SSI with training course descriptions to be included in SSI's marketing materials and posted on its website. By 1997 at the latest, the descriptions appeared on the SSI website with the legend "© <u>Systems Solution, Inc.</u>" [SOF, ¶ 6.] SSI thus held itself out as the owner of the descriptions, and neither Christopher Smith nor anybody else at CyberSolutions (or AGI) ever attempted to disavow SSI of that notion.

There was never any suggestion that the content of SSI's marketing materials or website belonged to AGI, either in 1996 or in the eight years that followed before Smith suddenly registered copyrights and filed this lawsuit. In fact, AGI did not even come into existence until approximately 2000, long after SSI had collaborated with CyberSolutions on the course descriptions that are at issue here. The fact remains that SSI had been using the descriptions, as its own, years before AGI came on the scene. As a legal matter, it is clear that the content belonged to SSI, in whole or in part.

Similarly untrue, or at least intentionally misleading, is Smith's claim that SSI used the course descriptions at issue in the Complaint "without express permission from AGI." SSI used virtually identical course descriptions to market training courses taught by AGI for *seven (7) years* pursuant to a series of agreements that expressly provided that SSI would do such marketing. All of the agreements were signed by Plaintiff Smith, initially on behalf of

CyberSolutions and later on behalf of AGI. It is inconceivable that, over the seven (7) year period, Smith never viewed SSI's website or marketing materials. Never did he or anyone else at CyberSolutions or AGI claim any ownership interest in the material until AGI and Smith filed suit in December 2004.

As owner of the disputed content, SSI is clearly entitled to use it and to share it with Acquired Learning, without being liable for copyright infringement. None of the Defendants can be liable for copyright infringement, and all are entitled to summary judgment on Plaintiffs' copyright claim.

> **2.     AGI is not entitled to a presumption of ownership and validity.**

The above evidence is sufficient to overcome any presumption of copyright validity that might flow from Plaintiffs' eleventh-hour copyright registrations or, at a minimum, to create a question of fact with respect to ownership. Nevertheless, Plaintiffs assert that their late registrations, within a month of filing suit, somehow entitle them to a prima facie finding of copyrightability. They are wrong.

To establish copyright infringement, Plaintiffs bear the burden of demonstrating, as a threshold matter, that they own a valid copyright in the work at issue. See John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 186 F. Supp. 2d 1, 19 (D. Mass. 2002); Skinder-Strauss Assoc. v. MCLE, 914 F. Supp 665, 670 (D. Mass. 1995); see also Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 605 (1st Cir. 1995).

Here, there are material questions of fact about whether AGI could ever claim a copyright to the course descriptions on which CyberSolutions and SSI collaborated in the mid-1990s. The registrations that provide the basis for Plaintiffs' claims (Exs. A and B to the Complaint) identify AGI as the creator of the original work in 2002 or 2003. Those registrations do not support a claim of infringement for the course descriptions that have been in use by SSI since at least 1997.

A valid certificate of registration is prima facie evidence of the facts stated in the registration certificate, *but only if the registration was made within five years after the first publication of the work*. See 17 U.S.C. § 410(c).  As noted above, SSI has been using material very similar to that covered by Plaintiffs' registrations on its website since at least 1997.  AGI did not even begin the registration process until late 2004, *seven (7) years later*.  Because more than five years had passed, AGI may not use the registration certificate as prima facie evidence of ownership or any other fact contained therein, and must instead present affirmative evidence to support its ownership claims.

AGI's copyright applications assert first use of the AGI website in 2003 and first use of the disputed course description content in 2002.  If AGI has adopted those dates in order to avoid the lengthy delay in applying for copyright protection and in an attempt to benefit from a purported presumption of validity, it has shot itself in the foot.  If it is true that AGI claims origination and first use in 2002, the undisputed facts show that SSI most certainly has a priority of ownership, as it owned and used the disputed content as early as 1997.  Under Plaintiffs' own theory of the case, therefore, either SSI owns the content or AGI has no presumption of validity.  Given this backdrop, Plaintiffs could never prevail on summary judgment.

**B.     At the very least, SSI had an implied license to the disputed course descriptions.**

Assuming, *arguendo*, that SSI did not have a direct ownership interest in the disputed course descriptions, it necessarily had an implied license.  The owner of a copyright may grant a nonexclusive license to another party to use and copy an otherwise protected work.  Danielson, 186 F. Supp. 2d at 18.  Such a nonexclusive license "may be granted 'orally, or may even be implied from conduct.'"  Id. (quoting 3 Nimmer § 10.03[A][7]).  "When the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license."  Id.  As noted by this Court (Young, J.) in Danielson:

> Such a nonexclusive license may also be found where the copyright owner has granted "consent, in the form of mere permission or lack of objection" to the would-be infringer.

Id. (quoting I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996)).

The undisputed facts of this case fully support a finding that, to the extent that SSI did not actually own the disputed content, it certainly was granted a nonexclusive license to use the content, by express permission and/or by lack of objection. As such, Plaintiffs' infringement claim necessarily must fail.

**C.     AGI's copyright claim is barred by the statute of limitations.**

Even if AGI could claim some exclusive ownership interest in the disputed content, it lost the right to enforce that interest against SSI by knowingly permitting SSI to treat the materials as its own for seven (7) years without ever (1) registering a copyright on the materials or otherwise suggesting to SSI that AGI claimed to own them (2) protesting or imposing any limits on SSI's use of the materials, or (3) contacting SSI in an attempt to resolve the ownership issues – which were murky at best – before launching into costly and unnecessary copyright litigation.

Claims for infringement under the Copyright Act must be brought within three years of the date the plaintiff's claim accrued. See 17 U.S.C. § 507(b). A claim accrues for purposes of this provision at the time a plaintiff has actual or constructive knowledge of the violation. See Danielson, 186 F. Supp. 2d at 24 (citing Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 202 (4th Cir. 1997) and Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)). A plaintiff has constructive knowledge of a violation "when a reasonably diligent person in the plaintiff's position would have become aware of the infringement." Danielson, 186 F. Supp. 2d at 24.

As detailed above, it is evident from the nature of the relationship between the parties that, objectively speaking, Plaintiffs knew or should have known that SSI was using the disputed

course descriptions since at least 1997, seven (7) years before Plaintiffs filed suit.  According to

Smith's affidavit, he believes that SSI's use of the disputed content, at any time, was improper

and thus constituted infringement.  Had Plaintiffs wanted to sue SSI for copyright infringement,

they needed to do so by 2000, at the latest.  Because Plaintiffs waited until 2004, their claim is

barred by the Copyright Act's three-year statute of limitations.

**D.     AGI's copyright claim is barred by the doctrines of waiver, laches and equitable estoppel.**

Even if the statute of limitations did not bar AGI's infringement claim, that claim is

barred by the doctrines of waiver, laches, and equitable estoppel, which preclude enforcement of

a copyright when the plaintiff has delayed unreasonably in asserting its rights, and the defendant

has changed its position in reliance on the lack of any action by the plaintiff.

Waiver

Where a party intentionally relinquishes a known right, either expressly or by conduct

inconsistent with an intent to enforce that right, it has waived it and may not thereafter seek

judicial enforcement.  See Gooley v. Mobil Oil Corp., 678 F. Supp. 939, 941 (D. Mass. 1987)

(citing Saverslak v. Davis-Cleaver Produce Co., 606 F.2d 208, 213 (7th Cir. 1979)); see also

Gutor Int'l AG v. Raymon Packer Co., 493 F. 2d 938, 944 (1st Cir. 1974); Niagara Fire Ins. Co.

v. Lowell Trucking Corp., 316 Mass. 652, 657 (1944).  Here, the undisputed conduct of Plaintiffs

– having waited as much as seven (7) years to bring suit for copyright infringement, all the while

encouraging and benefiting from SSI's use of the allegedly infringing content – constitutes a

waiver as a matter of law.   At the very least, it raises a question of fact that needs to be resolved

by the fact finder.  See MacDonald & Payne Co. v. Metallic Arts of New England, Inc., 324

Mass. 353, 356 (1949).

<u>Laches</u>

In the copyright context, the laches doctrine recognizes the basic principle that it is inequitable for a plaintiff to delay in asserting its rights for long enough that the defendant becomes "lull[ed] into a false sense of security" about its right to use the disputed material.  <u>See</u> <u>Stone v. Williams</u>, 873 F.2d 620, 626 (2$^{d}$ Cir. 1989);[2] <u>see also</u> <u>Jackson v. Axton</u>, 814 F. Supp. 42, 44 (C.D. Cal. 1993), <u>aff'd</u> 25 F.3d 884 (9th Cir. 1994) (laches bars infringement claim where years of delay cause defendant to believe it owns allegedly copyrighted material and to "conduc[t] business accordingly," including by assigning rights to third parties).

Even assuming, *arguendo*, that SSI itself was not the owner of the disputed content, at the very least it was "lulled into a false sense of security" by its years of using the now-disputed content under the SSI copyright, with full knowledge by Smith, CyberSolutions, and later AGI and without a word from Smith or AGI about a claim of ownership or infringement.  By the time it first learned that AGI claimed ownership in the content (and infringement by SSI), SSI had already authorized Acquired Learning to use the disputed content and had re-activated the Education tab of its website.

Equity demands that Plaintiffs be barred from profiting from the adverse consequences of their silence for so many years.  To the extent that Plaintiffs have any right of copyright in the disputed content, they sat on their rights.  Having heard no objection to its use of the disputed content, having operated under the impression of ownership itself (with its own © designation), and having been encouraged by Smith, CyberSolutions, and later AGI to continue using the disputed content, SSI reasonably believed that it had the right to use the content on SSI's website, and to "conduc[t] business accordingly."  <u>Jackson</u>, 814 F. Supp. at 44.  Plaintiffs'

---

[2] The case was later reversed by the Second Circuit after it came to light that the plaintiff's delay had been caused by fraudulent concealment of pertinent facts rather than by her own fault.  <u>Stone v. Williams</u>, 891 F.2d 410 (2d Cir. 1989).  The principle underlying the initial decision remains good law.

copyright claim should therefore be dismissed or, to the extent that there are issues of fact, put before a trier of fact.

<u>Equitable Estoppel</u>

The doctrine of equitable estoppel operates to preclude a party, both at law and inequity, "from asserting rights … as against another person, who has in good faith relied upon such conduct." <u>Precious Metals Assoc., Inc. v. Commodity Futures Trading Comm.</u>, 620 F.2d 900, 908 (1st Cir. 1980). "A person is estopped from denying the consequences of his conduct where that conduct has been such to induce another to change his position in good faith." <u>Id.</u> (quoting <u>Bergeron v. Mansour</u>, 152 F.2d 27, 30 (1st Cir. 1945)). Again, for the reasons cited above, Plaintiffs are estopped from asserting a claim for copyright infringement by their conduct and by their inaction for many years.

**E.     Plaintiffs' claims for attorneys' fees and statutory damages cannot stand.**

Although AGI's copyright claim was accompanied in the Complaint by a demand for statutory damages and attorneys' fees, those remedies are clearly unavailable to it. It is undisputed that Plaintiffs did not even seek copyright registration of the AGI website until November 2004, and that they only applied for copyright registration of the course content in December 2004, immediately before filing suit.

Under the Copyright Act, Plaintiffs cannot recover statutory damages or attorneys' fees for any alleged acts of infringement that occurred prior to the registration of the copyrights. 17 U.S.C. § 412; <u>see also</u> <u>EZ-Tixz, Inc. v. Hit-Tix, Inc.</u>, 919 F. Supp. 728, 735-36 (S.D.N.Y. 1996) (dismissing plaintiff's claim for statutory damages and attorneys' fees). Here, because the alleged infringement took place before Plaintiffs secured their copyrights, Plaintiffs' claim for

statutory damages and attorneys' fees cannot stand.  Defendants are entitled to summary judgment on that claim.[3]

**F.    Judeann Stipe is entitled to summary judgment on AGI's copyright claim.**

Plaintiffs argue that, if Defendants SSI and Acquired Learning are liable for copyright infringement, then Defendants Edwards, Novosat, and Wein are also liable under the doctrine of vicarious liability.  In its section on vicarious liability, Plaintiffs' motion is silent as to Defendant Judeann Stipe.

Stipe is merely a sales employee of Acquired Learning.  She is not an owner or officer. She had no personal role in any of the allegedly infringing activities set forth in the Complaint or Plaintiffs' summary judgment motion.  Indeed, Plaintiffs make no attempt to assert that Stipe is vicariously liable for the actions of Acquired Learning or SSI, because they know that she cannot be held so liable.

AGI's copyright claim against Stipe, which never had any good faith basis and which was used solely to harass and intimidate Stipe (the primary focus of Christopher Smith's scorn), must be dismissed.  Because Smith included Stipe as an individual Defendant on claims that he knew (or should have known) he could never prove against her, Stipe is entitled to an award of attorneys' fees and costs.

**G.    Plaintiffs' common law unfair competition claims are preempted by the federal Copyright Act, and thus must be dismissed.**

The Copyright Act states that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of [the Act]" are subsumed within the Act and preempted by it.  17 U.S.C. § 301(a); see also Danielson, 186 F. Supp. 2d at 27-28.  The cases

---

[3] There are no actual damages.  As a result, Plaintiffs have repeatedly attempted to use the specter of statutory damages and attorneys' fees as an attempt to leverage an unfair settlement with one or more Defendants.  Plaintiffs surely must have known that statutory damages and attorneys' fees are not applicable here, and their repeated attempts to threaten the imposition of such awards has been improper.

are clear that common law unfair competition claims and related unfair trade practices claims are preempted where they are "fundamentally equivalent" and do not contain an "extra element" of proof that differs from those necessary to prove copyright infringement.  See Data General Corp. v. Grumman Sys. Support Corp., 795 F. Supp. 501, 505-06 (D. Mass. 1992) (dismissing unfair competition claim as being preempted); see also Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998) (holding that state unfair competition claim was preempted); Danielson, 186 F. Supp. 2d at 29 (holding that Chapter 93A claim was preempted); Tingley Sys., Inc. v. CSC Consulting, Inc., 152 F. Supp. 2d 95, 108-10 (D. Mass. 2001) (citing Data General and holding that Chapter 93A claim was preempted).

Plaintiffs' common law unfair competition is fundamentally equivalent to its copyright infringement claim.  It relies upon the same allegations and requires absolutely no additional elements over and above what is required under its infringement claim.  A review of the Complaint demonstrates that all of the factual allegations and claims of "Improper Activities" are copyright-specific.  In essence, the two claims seek alternative relief for the same conduct.[4] Plaintiffs' unfair competition claim is thus preempted, and must be dismissed.

---

[4] Indeed, Plaintiffs have since moved to amend their Complaint to add claims for misappropriation of trade secrets, breach of the duty of loyalty, tortious interference, and a completely separate claim of unfair competition related to those new claims.  While Plaintiffs motion to amend should be denied, it nevertheless highlights the limited copyright-specific nature of its original unfair competition claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court <u>deny</u> Plaintiffs' motion for partial summary judgment and that the Court <u>grant</u> summary judgment to Defendants on all counts.

Respectfully submitted,


  /s/ Jason W. Morgan
Jason W. Morgan (BBO #633802)
Drohan, Hughes, Tocchio & Morgan, P.C.
175 Derby Street, Suite 30
Hingham, MA  02043
Tel.:  (781) 749-7200
Fax:  (781) 740-4335
jmorgan@dhtmlaw.com

Dated:  August 12, 2005

## <u>CERTIFICATE OF SERVICE</u>

I, Jason W. Morgan, hereby certify that on August 12, 2005, service of the foregoing was made on all counsel of record through the Court's CM/ECF on-line docket system.

  /s/ Jason W. Morgan
Jason W. Morgan

## <u>LOCAL RULE 7.1(A)(2) CERTIFICATION</u>

Undersigned counsel hereby certifies that the parties have conferred and attempted in good faith to resolve the issues raised in this motion.

  /s/ Jason W. Morgan
Jason W. Morgan