UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN GRAPHICS INSTITUTE, INC.
and CHRISTOPHER SMITH,

               Plaintiffs,

v.

ACQUIRED LEARNING, INC., SYSTEMS
SOLUTION, INC., JUDEANN STIPE, DEAN
NOVOSAT, CLARK EDWARDS and
RICHARD WEIN,

               Defendants.

C.A. No. 04 12611 JLT

## L.R. 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Defendants hereby submit the following statement of material facts in support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and in support of Defendants' Cross-Motion for Summary Judgment. Plaintiffs did not provide a separate Statement of Undisputed Material Facts, in numbered paragraph form, thus making it difficult to cross-reference any admissions or denials of Plaintiffs' factual allegations. Defendants therefore reserve their rights to contest the validity of any assertions made by Plaintiffs.[1]

1.       In or around 1996, Defendant Systems Solution, Inc. ("SSI"), a well-established technology services company, realized that it could better serve its consulting and equipment

---

[1] Defendants also reserve their rights to object to Plaintiffs' statement of facts because there has been very little in the way of discovery by and between the parties, other than the exchange of documents in conjunction with the parties' Initial Disclosures.

sales clients by helping them obtain training in common electronic publishing software applications. To help it accomplish this goal, SSI hired CyberSolutions, Inc. ("CyberSolutions"), a former business venture of Plaintiff Christopher Smith ("Smith"), as an independent contractor to provide training services to SSI's existing clients. (Wein Aff. ¶ 3, Ex. 1.)

2.      Under the 1996 Agreement, CyberSolutions agreed to offer training courses to SSI's clients at SSI's well-equipped training facility, and SSI agreed to market and promote Cyber's services. (Wein Aff. ¶ 4, Ex. 1.) The 1996 Agreement was signed by Plaintiff Smith on behalf of CyberSolutions and by Defendant Richard Wein ("Wein") on behalf of SSI. (Id.)

3.      Along with the 1996 Agreement, SSI and CyberSolutions signed an April 15, 1996 Confidentiality Agreement and a May 13, 1996 Agreement Not to Compete. (Wein Aff. ¶ 5, Exs. 2, 3.) Both of those agreements were signed by Christopher Smith, on behalf of CyberSolutions. (Wein Aff. ¶ 5.)

4.      Pursuant to Confidential Agreement, CyberSolutions agreed to protect SSI's confidential information, which expressly included "computer programs and listings." Notably, the Confidentiality Agreement states: "CyberSolutions acknowledges that, as between SSI and CyberSolutions, the Confidential Information **and all related <u>copyrights</u> and other intellectual property rights, are (and at all times will be) the property of SSI**, even if suggestions, comments, and/or ideas made by CyberSolutions are incorporated into the Confidential Information or related materials during the period of this Agreement." (Wein Aff. ¶ 6, Ex. 2 (emphasis added).)

5.      Pursuant to the 1996 Agreement and related contracts, SSI began to market and promote education classes to its extensive roster of clients. To that end, SSI created print materials describing its courses. (Wein Aff. ¶ 7, Ex. 4.)

6.      By 1997, SSI had begun electronically publishing the course descriptions for its new software training classes on its website.[2]  (Wein Aff. ¶ 8, Ex. 5.)  These class descriptions – which bear a copyright notice attributing ownership to SSI – were substantially similar (if not identical) to those that Plaintiffs now claim Defendants have copied from AGI's 2002 website.  A historical analysis of SSI's website shows that these ***1997 class descriptions bearing a copyright designation were in use on the SSI website continuously up until late 2004*** (with minor modifications and a temporary period of inactivity), when SSI learned of this lawsuit and voluntarily removed the suddenly disputed content from its website.  (Wein Aff. ¶ 8.)  SSI's website at that time also reflected that it had partnered with CyberSolutions to market training courses.  (Id., Ex. 6.)

7.      For some time, the relationship between CyberSolutions and SSI was mutually beneficial.  SSI was able to offer its customers the training they needed.  (Wein Aff. ¶ 9.)  CyberSolutions, for its part, profited greatly, gaining access to SSI's customer lists, enjoying free use of SSI's training facility and equipment, and earning tens of thousands of dollars in training fees and commissions.  (Id.)

8.      At some point, Plaintiff American Graphics Institute, Inc. ("AGI") assumed CyberSolutions' role as contractor to SSI.  (Wein Aff. ¶ 10.)  Importantly, AGI was not the party with whom SSI collaborated on the disputed course descriptions; rather, it was CyberSolutions.  However, AGI (not CyberSolutions) is currently pursuing claims for copyright infringement.  In the copyright applications attached to the Complaint, AGI acknowledges origination and first use

---

[2] Defendants dispute AGI's contention that the parties' business relationship began in 1998.  It started as early as 1996, and the course descriptions at issue appeared on SSI's website as early as 1997.

as being as late as 2002 or 2003, which is long after SSI was using the course descriptions in conjunction with CyberSolutions.  (Complaint, Exs. A and B.)

9.      Over time, SSI and AGI continued to work together, but as SSI's education department grew, the nature of its relationship with AGI became more reciprocal.  SSI developed an independent education program, offering more creative, complex courses than the basic software trainings AGI could provide.  (Wein Aff. ¶ 11; Rodrigo Aff. ¶¶ 3-5.)  These courses were developed in-house by SSI's education department and advertised on SSI's website alongside its existing basic course schedule.  The entire website continued to bear an SSI copyright notice.  (Wein Aff. ¶ 11.)

10.     In or about May 2002, SSI and AGI entered into an agreement whereby SSI would work with AGI to identify training needs, and they agreed to "work together" to develop courses to meet those needs.  (Wein Aff. ¶ 12, Exs. 7, 8; Rodrigo Aff. ¶¶ 3-5.)  Both companies helped to sell the other's training products, listing all noncompetitive courses offered by both parties in their marketing materials.  (Wein Aff. ¶ 12, Exs. 7, 8.)  During this time, and particularly in 2000-2001, SSI and AGI communicated on a daily basis, sometimes even more frequently, about their joint marketing efforts, including the course listings on the SSI website. (Rodrigo Aff. ¶ 6; Wein Aff. ¶ 13.)  Plaintiff Smith was personally involved in these communications, occasionally even making suggestions to SSI about changes it should make to the AGI class offerings on its website.  (Rodrigo Aff. ¶¶ 6-7.)

11.     At no time did anyone from AGI suggest that any content on the SSI website belonged in any way to AGI or infringed any AGI copyright or that there were any restrictions of any kind on SSI's ability to use such content for whatever purpose it chose.  (Wein Aff. ¶ 14.)

Defendants dispute that Plaintiffs have any copyright in the disputed course descriptions or that Plaintiffs can properly maintain a copyright claim against them.

12.    By September 2003, the level of activity in SSI's education branch had diminished significantly, and it decided to leave the training business.  (Wein Aff. ¶ 15.)  Shortly thereafter, SSI removed the "Education" portion of its website from public view.  (Id.)  SSI took this action not at the request of AGI, which was entirely silent on the subject of the use of any joint marketing materials, but because there was no longer any need for SSI to advertise courses.  (Id.)  SSI disputes that AGI terminated their reseller business arrangement in accordance with terms of the applicable agreement; in fact, the parties course of dealings shows that the business relationship continued through November 2004, almost immediately before AGI and Smith filed suit.  (Id.)

13.    A year later, in the Summer of 2004, Defendants Clark Edwards and Dean Novosat contacted Wein and told him about a new software training company they were thinking about starting, Acquired Learning, Inc. ("Acquired Learning").  (See Wein Aff. ¶ 16; Edwards Aff. ¶ 4; Novosat Aff. ¶ 4.)  They asked Wein whether SSI might be interested in partnering with them to provide training classes to SSI customers and others in SSI's then-unused training facility.  Wein agreed.  (Id.)

14.    As the three discussed marketing efforts, Wein explained to Edwards and Novosat that SSI already had class listings for most of the basic courses the new venture would offer.  He told them the listings were in the inactive "Education" tab of the SSI website and authorized them to use any or all of that content to develop the Acquired Learning website.  Because the material had appeared on the SSI website for so many years, no one believed, or had any reason

to believe, that AGI claimed an ownership interest in the disputed course descriptions. (Wein Aff. ¶ 17; Edwards Aff. ¶ 5; Novosat Aff. ¶ 5.)

15.    In or about August 2004, Novosat developed a website for Acquired Learning using the authorized materials from the Education section of the SSI website. (See Novosat Aff. ¶ 6.) This website went public at http://www.acquiredlearning.com on or about September 2004. (Id.) Shortly thereafter, in October 2004, SSI reactivated its Education tab and modified the content to reflect the fact that Acquired Learning would be conducting the trainings. (See Wein Aff. ¶ 19; Novosat Aff. ¶ 6.)

16.    In early October 2004, shortly after the Acquired Learning website and new SSI Education tab had gone live, SSI sent out an announcement about the collaboration to its email contact list. (See Wein Aff. ¶ 19.) The announcement explained that Acquired Learning would be SSI's new training partner. It went on to list several of the teachers who would be conducting the trainings; several were current and former AGI trainers. Finally, the email announced that Judeann Stipe, AGI's former sales representative, would be working for Acquired Learning. (Id.)

17.    Christopher Smith and his wife, Jennifer, did not take this news well. Jennifer, an officer of AGI, expressed to Stipe that she was "in shock" and felt like she had "been punched in the gut." (Stipe Aff. ¶ 4, Ex. 1.) She warned Stipe that "this is a small industry" and vowed to "do [her] best to let everyone know my disappointment on this matter." (Id.) She also warned Stipe, "Good luck getting through Chris with this one…I won't even be his voice of reason anymore." (Id.)

18.    Christopher Smith put action to his wife's words. He tried to break up the new venture by suggesting to SSI that Novosat was a competitor and therefore an inappropriate

business partner.  (Wein Aff. ¶ 20, Ex. 9.)  He contacted trainers who were listed in the

SSI/Acquired Learning announcement and threatened to withdraw business from them if they did

not remove their names from the Acquired Learning website.  (Stipe Aff. ¶ 5, Ex 2.)  He even

told one prospective Acquired Learning trainer, *a propos* of nothing, that Judeann had filed a

personal bankruptcy petition, commenting "When banks, retailers, and lenders are forced to

write-off huge amounts of credit and other loans – as they were forced to do with Judeann – it

impacts us all."  (Id.)

19.     And then, of course, Smith found a lawyer, filed copyright registration

applications for the AGI website, and brought this lawsuit, without warning or a cease and desist

letter.  Indeed, the first that any Defendant learned of Plaintiffs' claim of copyright ownership

was when they learned that AGI and Smith had a filed a lawsuit for copyright infringement.

(Edwards Aff. ¶ 6; Novosat Aff. ¶ 7; Wein Aff. ¶ 21.)

20.     After learning that the Complaint had been filed, Novosat, in an abundance of

caution, stayed up all night that night editing the Acquired Learning website to replace any

potentially offending text with different language.  (Edwards Aff. ¶ 6; Novosat Aff. ¶ 7.)  SSI

soon followed, also out of a desire to avoid conflict, despite its firm belief that the content was its

own.  (Wein Aff. ¶ 21.)  None of the Defendants has any reason, desire, or intent to use any of

the disputed content in the future, as they do not see any intrinsic value in the course descriptions

themselves.  (Wein Aff. ¶ 21; Novosat Aff. ¶ 7; Edwards Aff. ¶ 6.)

Respectfully submitted,


  /s/ Jason W. Morgan
Jason W. Morgan (BBO #633802)
Drohan, Hughes, Tocchio & Morgan, P.C.
175 Derby Street, Suite 30
Hingham, MA  02043
Tel.:  (781) 749-7200
Fax:  (781) 740-4335
jmorgan@dhtmlaw.com

Dated:  August 12, 2005

## CERTIFICATE OF SERVICE

I, Jason W. Morgan, hereby certify that on August 12, 2005, service of the foregoing was made on all counsel of record through the Court's CM/ECF on-line docket system.

  /s/ Jason W. Morgan
Jason W. Morgan