UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN GRAPHICS INSTITUTE, INC.
and CHRISTOPHER SMITH,
              Plaintiffs,

v.

ACQUIRED LEARNING, INC., SYSTEMS
SOLUTION, INC., JUDEANN STIPE, DEAN
NOVOSAT, CLARK EDWARDS and
RICHARD WEIN,
              Defendants.

C.A. No. 04 12611 JLT

## AFFIDAVIT OF RICHARD WEIN

I, Richard Wein, hereby depose and state as follows, based on my personal knowledge and my review of documents:

1. I am President and 50% owner of Service Solutions, Inc., a Delaware corporation, t/a Systems Solution, Inc. ("SSI"), located at 376 Crooked Lane, King of Prussia, PA 19406. I submit this affidavit in support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and in support of Defendants' Cross-Motion for Summary Judgment.

2. SSI is a well-established technology services company, located in Pennsylvania, that resells and leases computer hardware and software to customers primarily located in Pennsylvania. SSI also provides IT services and consulting work to its clients for their use of SSI's hardware and software products.

3. In 1996, SSI realized that it could better serve its consulting and equipment sales clients by helping them obtain training in common electronic publishing software applications. To help it accomplish this goal, SSI hired, among others, Cyber Solutions, Inc. ("CyberSolutions"), a former business venture of Plaintiff Christopher Smith ("Smith"), as an

independent contractor to provide training services to SSI's existing clients. (See May 14, 1996 Agreement (the "1996 Agreement"), attached as Exhibit 1, at Articles I.B. and III.A.)

4. Under the 1996 Agreement, CyberSolutions agreed to offer training courses to SSI's clients at SSI's well-equipped training facility, and SSI agreed to market and promote CyberSolutions' services. (See Ex. 1, at Articles III.A. and IV.B.) The 1996 Agreement was signed by Smith on behalf of CyberSolutions and by me on behalf of SSI.

5. Along with the 1996 Agreement, SSI and CyberSolutions signed an April 15, 1996 Confidentiality Agreement (attached as Exhibit 2) and a May 13, 1996 Agreement Not to Compete (attached as Exhibit 3). Both of those agreements were signed by Christopher Smith, on behalf of CyberSolutions.

6. Pursuant to Confidential Agreement, CyberSolutions agreed to protect SSI's confidential information, which expressly included "computer programs and listings." (See Ex. 2, ¶¶ I-II.) Notably, the Confidentiality Agreement states: "CyberSolutions acknowledges that, as between SSI and CyberSolutions, the Confidential Information ***and all related copyrights and other intellectual property rights, are (and at all times will be) the property of SSI***, even if suggestions, comments, and/or ideas made by CyberSolutions are incorporated into the Confidential Information or related materials during the period of this Agreement." (See Ex. 2, ¶ VI (emphasis added).)

7. Pursuant to the 1996 Agreement and related contracts, SSI began to market and promote education classes, to be conducted by its contractor, CyberSolutions, to its extensive roster of clients. To that end, SSI created print materials describing its courses. (See Exhibit 4.)

8. By 1997, SSI had begun electronically publishing the course descriptions for its new software training classes on its website. (See Exhibit 5.) These class descriptions – which

- 2 -

bear a copyright notice attributing ownership to SSI – were substantially similar (if not identical) to those that Plaintiffs now claim Defendants have copied from AGI's 2002 website. A historical analysis of SSI's website shows that these ***1997 class descriptions bearing a copyright designation were in use on the SSI website continuously up until late 2004*** (with minor modifications and a temporary period of inactivity), when SSI learned of this lawsuit and voluntarily removed the suddenly disputed content from its website. SSI's website at that time also reflected that it had partnered with CyberSolutions to market training courses. (See Exhibit 6.)

9. For some time, the relationship between CyberSolutions and SSI was mutually beneficial. SSI was able to offer its customers the training they needed. Cyber, for its part, profited greatly, gaining access to SSI's customer lists, enjoying free use of SSI's training facility and equipment, and earning hundreds of thousands of dollars in training fees and commissions.

10. At some point, Plaintiff American Graphics Institute, Inc. ("AGI") assumed CyberSolutions' role as contractor to SSI.

11. Over time, SSI and AGI continued to work together, but as SSI's education department grew, the nature of its relationship with AGI became more reciprocal. SSI developed an independent education program, offering more creative, complex courses than the basic software trainings AGI could provide. These courses were developed in-house by SSI's education department and advertised on SSI's website alongside its existing basic course schedule. The entire website continued to bear an SSI copyright notice.

12. In or about May 2002, SSI and AGI entered into an agreement whereby SSI would work with AGI to identify training needs, and they agreed to "work together" to develop

courses to meet those needs. (See Exhibits 7 and 8, at ¶11.) Both companies also agreed to help sell each other's training products, listing all non-competitive courses offered by both parties in their marketing materials. (See Exs. 7 and 8, ¶¶ 1, 8.)

13. During this time, and particularly in 2000-2001, SSI and AGI communicated on a daily basis, sometimes even more frequently, about their joint marketing efforts, including the course listings on the SSI website. Plaintiff Smith was personally involved in these communications, occasionally even making suggestions to SSI about changes it should make to the AGI class offerings on its website.

14. At no time did anyone from AGI suggest that any content on the SSI website belonged in any way to AGI, that any aspect of the SSI website infringed any AGI copyright, or that there were any restrictions of any kind on SSI's ability to use such content for whatever purpose it chose.

15. By September, 2003, the level of activity in SSI's education branch had diminished significantly, and it decided to suspend the training business. Shortly thereafter, SSI removed the "Education" portion of its website from public view. SSI took this action not at the request of AGI, which was entirely silent on the subject of the use of any joint marketing materials, but because there was no longer any need for SSI to advertise courses. SSI disputes that AGI terminated their reseller business arrangement in accordance with terms of the applicable agreement; in fact, the parties course of dealings shows that the business relationship continued through November 2004, almost immediately before AGI and Smith filed suit.

16. A year later, in the Summer of 2004, Defendants Clark Edwards and Dean Novosat contacted me and told me about a new software training company they were thinking about starting, Acquired Learning, Inc. ("Acquired Learning"). They asked me if SSI would be

- 5 -

interested in partnering with them to provide training classes to SSI customers and others in SSI's then-unused training facility. I agreed.

17. As we discussed marketing efforts, I explained to Edwards and Novosat that SSI already had class listings for most of the basic courses the new venture would offer. I told them that the listings were in the inactive "Education" tab of the SSI website, and I authorized them to use any or all of that content to develop the Acquired Learning website. Because the material had appeared on the SSI website for so many years, with a copyright indicator in favor of SSI, I had no reason to believe that SSI could not continue to use the material, for any purpose, or that AGI would assert any claim of ownership in the material.

18. It is my understanding that, in or about September, 2004, Novosat developed a website for Acquired Learning using the authorized materials from the Education section of the SSI website, which I had given permission for him to do.

19. In or about October 2004, SSI reactivated its Education tab and modified the content to reflect the fact that Acquired Learning would be conducting the trainings. In early October 2004, shortly after the Acquired Learning website and new SSI Education tab had gone live again, SSI sent out an announcement about the collaboration to its email contact list. The announcement explained that Acquired Learning would be SSI's new training partner. It went on to list several of the teachers who would be conducting the trainings; several were current and former AGI trainers. Finally, the email announced that Judeann Stipe, AGI's former sales manager, had become the sales manager for Acquired Learning.

20. Not long thereafter, Smith informed me that I should not do business with Acquired Learning because, he claimed, Novosat was a competitor and therefore an inappropriate business partner. (See Exhibit 9.) I also learned that Smith contacted trainers who

- 6 -

were listed in the SSI/Acquired Learning announcement and threatened to withdraw business from them if they did not remove their names from the Acquired Learning website.

21.     Smith filed this lawsuit without advance notification that he claimed an ownership interest in the disputed course descriptions. In fact, the first I learned that Smith claimed any such interest came when I received a copy of the Complaint. Out of a desire to avoid conflict, and despite our firm belief that the website content belonged to SSI, we immediately changed the content of our website. SSI has no reason, desire, or intent to use any of the disputed content in the future. The course descriptions have no inherently intrinsic value.

22.     I have researched the historical archives of CyberSolutions' website and AGI's website, at http://web.archive.org. I was able to determine that, on or about January 18, 2000, CyberSolutions posted on its website that "CYBERSOLUTIONS IS NOW AMERICAN GRAPHICS INSTITUTE." (See Exhibit 10.)

23.     I also was able to determine that, at least as of October 11, 2004, AGI had no copyright designation on its website. I determined that it was not until November 24, 2004 that AGI changed its website to reflect a copyright designation. (See Exhibit 11.)

Signed this 12th day of August 2005 under the pains and penalties of perjury.

_____
Richard Wein