UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN GRAPHICS INSTITUTE, INC.,
and CHRISTOPHER SMITH,

        Plaintiffs,

        v.

ACQUIRED LEARNING, INC., SYSTEMS
SOLUTION, INC., JUDEANN STIPE, DEAN
NOVOSAT, CLARK EDWARDS,
and RICHARD WEIN,

        Defendants.

Civil Action No. 04-12611-JLT

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

        The Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment and Cross Motion for Summary Judgment (hereinafter the "Cross Motion") is based on the faulty premise that the course descriptions at issue are course descriptions that "have appeared on defendant SSI's website since 1997," and that somehow Defendant SSI is the author of the course descriptions. This premise is false. *The course descriptions that appeared on SSI's website in 1997 do not reflect the copyrighted materials that are at issue in this case.* In addition, by Defendants' own admissions, Plaintiff AGI is the owner and author of the course descriptions.

        Upon this fallacy, the Defendants construct a straw man argument, based on technical and equitable defenses, in an attempt to show that the alleged infringement by Defendants occurred at some earlier date and, as such, the infringement claim cannot now be brought. What the undisputed evidence demonstrates and Defendants' Cross Motion fails to address, however, is that the Plaintiffs' cause of action for copyright infringement arises out of the Defendants' acts in the summer of 2004. At that time, the Defendants copied and posted to their own infringing websites,

without Plaintiffs' permission, substantial portions of the Plaintiff's website, including at least one new course title that was substantially similar to a new custom course offered on the AGI website, *which had never previously been posted on any website other than plaintiffs'*. There is no genuine issue of material fact as to this evidence and defendants have raised none.

There is no genuine issue that the Plaintiffs have valid copyrights in the works that are infringed. Also, there are no material facts to support Defendants' claim that they had an implied license to conduct their infringing activities in 2004. Further, because the Plaintiff's cause of action for copyright infringement is directed at the Defendants' 2004 acts of infringement, for the reasons set forth herein, Defendants' Cross Motion for Summary Judgment on the grounds of the Statute of Limitations and the equitable defenses of Laches, Waiver and Estoppel, must be denied.

In addition, it is clear that (i) statutory damages and attorneys' fees are available to Plaintiff Smith for infringement of his book; (ii) Judeann Stipe, who was clearly involved in the infringement, may be found liable even though she is neither an officer nor director; and (iii) Plaintiffs have satisfied the "extra element" test with respect to their claim of common law unfair competition and the claim, therefore, is not preempted by the Copyright Act. Thus, the Cross Motion on these grounds must also fail.

## I. STATEMENT OF FACTS

**A.    AGI And Its Copyrighted Works**

In 1995, Christopher Smith co-founded Cyber Solutions, Inc. ("Cyber"), which incorporated in Pennsylvania. In 2000, Cyber changed its name to American Graphics Institute, Inc. ("AGI").[1] In 1995 and 1996, AGI, then known as Cyber, developed courses titles and course descriptions for its

---

[1] *See* Plaintiffs' Response to Defendants' Local Rule 56.1 Statement of Material Facts, submitted in support of this Opposition to Defendants' Cross-motion For Summary Judgment, ¶1. References to Plaintiffs' Response to Defendants' Local Rule 56.1 Statement of Material Facts are abbreviated herein as "F__."

2

courses in software training ("1996 Course Descriptions"). Although AGI's course advertising materials have changed substantially over the years, there are aspects of seven of AGI's current course descriptions that resemble the 1996 Course Descriptions.[2] (F21.)

All of the course descriptions that appear on the AGI website were independently created and developed by AGI or Cyber, without assistance or collaboration from SSI. From 1995 to the present, neither AGI nor Cyber created course descriptions for, or at the request of, SSI or delivered any course descriptions to SSI for use on SSI's website. Indeed, Defendants SSI and Wein admit that the course descriptions at issue in this case constitute "all AGI language." (F6.)

In November and December of 2004, respectively, AGI filed two copyright registration applications on its course descriptions authored by AGI on its website found at or through URL *www.agitraining.com*, for which the Register of Copyrights has duly issued Registration Certificate Nos. TX 6-052-029 and TX 6-062-024 (collectively, "AGI's Copyrighted Works"). Registration Certificate No. TX 6-052-029 claims a January 2, 2003 publication date of the AGI website. This copyright registration claims copyright in "text, compilation and photos," and specifically acknowledges that the compilation contains "some previously published text." As discussed above, seven of AGI's course descriptions contain portions from AGI's 1996 Course Descriptions, and AGI disclosed this in its copyright application by specifically acknowledging that AGI's Copyrighted Work contained "some previously published text." Registration Certificate No. TX 6-062-024 is directed to a June 5, 2002 publication date of the website, and it similarly claims copyright in "text, compilation and photos." (F20.)

B.      **Defendants SSI And Richard Wein, And Their Infringing Activities**

Because AGI was in the business of offering software training courses, it made sense for

---

[2] The seven course descriptions that contain some similar language to AGI's current copyrighted works are "Acrobat &

3

AGI to develop business relationships with companies like Defendant Systems Solution, Inc. ("SSI"), who could lease AGI computer equipment so that AGI could conduct hands-on training for its students using the computer equipment. Starting in 1996, AGI, then known as Cyber, developed a business relationship with Defendants Richard Wein and SSI to have SSI lease computers to AGI so that could conduct its training courses. (F1.) In addition to equipment leasing, SSI and AGI developed a reseller business arrangement whereby SSI would resell AGI's software training courses on behalf of AGI. Although SSI had some courses of its own, they were specifically directed to courses that were not competitive with AGI's. (F1.)

During the years of 1996-2001, AGI / Cyber and SSI executed several different types of agreements to facilitate their ongoing computer equipment leasing relationship and their reseller relationship. None of these agreements involved the transfer of any rights to AGI's copyrighted works or the independent or collaborative development of course descriptions. (F2- F5.)

For example, on April 15, 1996, Cyber and SSI entered into Confidentiality Agreement. (the "Confidentiality Agreement"), which dealt exclusively with confidential information owned by SSI and disclosed to Cyber. The Confidentiality Agreement defined the term "Confidential Information" to mean "any information which is proprietary to SSI, whether or not owned by SSI, *which is not generally known other than by SSI,* and which CyberSolutions may obtain through any direct or indirect contact with SSI." (Emphasis added.) While the Confidentiality Agreement defined "Confidential Information" to include, "computer programs and listings," it did not include the course descriptions that were independently developed by Cyber. In fact, *the Confidentiality Agreement specifically excluded from the definition of "Confidential Information," "information independently developed by Cybersolutions."* (F4)

---

PDF I," "QuarkXpress I," "QuarkXpress II," "PageMaker I," "PageMaker II," and "HTML I." (F21.)

On May 13, 1996, SSI signed "Agreement Not to Compete" with Cyber. (F3.) On May 14, 1996, SSI and Cyber executed an agreement whereby Cyber agreed to provide to software training solutions and SSI agreed to provide training facilities for Cyber's software training solutions and to market and promote Cyber's training services. The May 14, 1996 Agreement did not authorize SSI to use Cyber's course descriptions without permission. In fact, a Termination Clause in the May 14, 1996 states that Cyber has the right to "terminate" the Agreement if there was "***Use by SSI of CYBER copyrighted materials without the written permission of CYBER.***" [Emphasis added.] (F2.) On May 20, 2002, AGI and SSI entered into a agreement in which SSI agreed to resell and promote AGI's courses, and SSI agreed to provide a training room use at the SSI facility. (F10.)

None of these agreements provided SSI with any rights what so ever with respect to Cyber/AGI's copyrighted works, including its marketing materials and course descriptions. AGI/Cyber never collaborated with SSI to develop any course descriptions. (F1.)

Although AGI / Cyber never granted SSI with any rights to use its course descriptions, SSI began using AGI's course descriptions as early as 1997 to promote its courses. For example, AGI's 1996 Course Advertising Materials are copied verbatim in SSI's 1997 website and SSI's course catalogue, which illustrates a pattern of SSI's copying of AGI's course descriptions. Up until the Summer of 2003, SSI received a commission if it resold AGI's courses for AGI. (F22, F23.)

In the late Summer of 2003, AGI and SSI's reseller relationship terminated. At that time, AGI objected to SSI's use of its course descriptions. To the extent SSI argues that it had an implied right to use AGI's materials while it was promoting AGI's courses, that right unquestionably and indisputably ended with the 2003 termination. AGI prohibited SSI from reselling AGI's courses and required SSI to remove all of AGI's course descriptions and SSI removed all of AGI's course descriptions from its website in the late Summer/early Fall of 2003. (F24.)

5

Although SSI was no longer permitted to resell AGI's courses, AGI still retained SSI's computer leasing services until the summer of 2004. During this period, the reseller agreement was no longer in effect, and SSI did not use AGI's course descriptions (AGI's Copyrighted Works) to promote AGI's courses. (F25.)

Over a year after SSI had appropriately removed all of AGI's Copyrighted Works following AGI's and SSI's termination of their reseller business arrangement, Christopher Smith discovered that SSI had copied AGI's Copyrighted Works on the SSI website, *www.ssi-net.com* ("SSI Infringing Website"), in the Summer of 2004. At that time, the SSI Infringing Website used verbatim content, at least twenty-eight pages of content, taken from AGI's Copyrighted Works. It should be noted that SSI did not use the materials that it first copied from AGI in 1997, but it copied content from AGI's current website. The SSI Infringing Website also listed, *for the first time,* at least one new course title that was similar to a new custom course offered on the AGI website that was modeled after a book co-authored by Christopher Smith. (F26.)

SSI never requested permission from AGI to use the course descriptions and never informed AGI that it intended to reactivate the education portion of its website. Neither AGI nor Christopher Smith granted Defendants permission to copy AGI's course advertising materials from the AGI Website onto the SSI Infringing Website, or permission to use AGI's course content to promote Defendants' competitive courses, and Defendants' Cross Motion does not contend that they received such permission in 2004. AGI independently authored each and every one of the twenty-eight course descriptions at issue, and Defendants agree that the infringing course descriptions all constitute "AGI language." (F27-29.)

The SSI Infringing Website contained verbatim copying of what appears on AGI's website today. The SSI Infringing Website reflects new content that AGI added in 2003, such as Photoshop

6

III and Premiere II, and new course descriptions that AGI added in 2003, such as Photoshop I, Photoshop II and DreamWeaver II. (F6.)

In the Summer of 2004, Defendant SSI and Wein copied, without permission, AGI's Copyrighted Works, i.e. AGI's website as it appeared in publication in 2002 and 2003, to promote courses not offered by AGI, but courses offered by a newly formed competing company, the Defendant corporation, Acquired Learning, Inc. ("Acquired"). (F30.)

C.      **Defendants Stipe, Novosat, Edwards And Acquired, And Their Infringing Activities**

Defendant Novosat is a former consultant to AGI. Defendants Edwards and Stipe are former employees of AGI. Edwards was formerly the assistant treasurer of AGI when AGI was operating out of Pennsylvania. Stipe started working at AGI in 1996. Stipe was employed at AGI through June 30, 2004 as a Sales Manager and later a Strategic Account Manager. (F31.)

While Stipe was still working for AGI, without AGI's management's knowledge, she used AGI's resources to make sales to AGI's customers not for AGI, but for her new competition company, Acquired. Stipe resigned her employment at AGI effective July 1, 2004, and told AGI management that her intention was to become a homemaker. Immediately after resigning from AGI, Stipe instead went to work for Acquired. (F32, F38-F40.)

In July and August of 2004, Stipe and Novosat accessed without permission AGI's secured database servers located in Woburn, MA. When Stipe accessed AGI's secured database servers, she misappropriated more than 23,000 customer records from AGI's customer lists and 14,000 email records. On several other occasions, Stipe and Novosat accessed AGI's secured database servers and exported large amounts of data for Acquired. (F43)

Acquired's main facility is AGI's old location in Lancaster, Pennsylvania in AGI's old "Blue Bell Facility." Not only did Acquired begin operating in AGI's old facility with a staff that consists

7

primarily of former AGI people, including AGI's course instructors, but Acquired also does business as "ALI," which sounds very similar to the acronym Plaintiff "AGI" has used to identify itself in its business. Yet another example of how Defendant ALI has taken steps to trade on plaintiff AGI's established business. (F50.)

To promote their courses to AGI's customers, Defendants Acquired, Stipe, Novosat and Edwards copied AGI's course descriptions on the website *www.acquiredlearning.com* ("Acquired Infringing Website"). The Acquired Infringing Website used unauthorized copies, at least eighteen pages of AGI's courses descriptions from AGI's Copyrighted Works to promote Acquired's courses that are in direct competition with AGI. (F46-48.) The Acquired Infringing Website listed at least one new course title that was substantially similar to a new 2004 custom course offered on the AGI website. (F48.)

The Acquired Defendants contend that they received permission to use AGI's Copyrighted Works from SSI. This allegation, however, is preposterous because each of the Acquired Defendants had a long standing relationship with AGI and had intimate knowledge of AGI's Copyrighted Works. Stipe, for example, worked for AGI / Cyber from 1996 through 2004, and she was actively involved in promoting AGI's courses using AGI's Copyrighted Works. (F49.) The fact that Acquired used AGI's Copyrighted Works to interface with AGI's customers, used a business name (ALI), which is similar to AGI, and a occupied AGI's former office space in Lancaster indicates the extent to which Acquired relied on AGI's goodwill and proprietary information to misdirect customers. (F50.)

In any event, even if Acquired received permission from SSI, SSI could not grant such permission because, as set forth above, SSI had no rights in the materials. Thus Acquired's claim does not create a genuine issue of material fact. (F51.)

## II. ARGUMENT

A. **Plaintiffs Are The Valid Owners Of The Copyrighted Works At Issue**

The Defendants' claim that SSI is the owner of the course descriptions is without merit. None of the contracts referenced by the Defendants involve content that was independently created by Cyber/AGI or refer to any alleged "collaboration" for the creation of the course descriptions. Moreover, in email correspondence between some of the Defendants at the time they were confronted about the infringement, Wein *admits* that he "expunged all AGI language and inserted ALI stuff where applicable" and that he should have checked the descriptions himself "before he put them back up." Thus, at no time did SSI believe that the content was theirs or that they could claim any ownership right to the course descriptions.

Further, the Defendants' argument with respect to the presumption of validity hinges upon two falsehoods: (i) that the copyrighted materials, which the Defendants infringed, are comprised solely of works that existed prior to 2002; and (ii) that the Plaintiffs claim of infringement is for course descriptions that have been in use by SSI since 1997.

As noted in the copyright registrations, the Plaintiff AGI has claimed copyright protection in the "text, compilation and photos" of the AGI Website, and the first registration specifically incorporates into the compilation, "[q]uotes and illustrations from other sources and *some previously published text*." (Emphasis added.). That portions of seven course descriptions, which were independently created by Cyber, appeared similarly on the SSI Infringing Website in 1997, is *irrelevant* to the issue of whether the Defendants committed Copyright infringement by copying, verbatim, AGI's compilation website, which was published in 2002 and 2003.

Thus, the Defendants' argument that the Plaintiffs are not entitled to a prima facie presumption of validity is without merit. The registrations, dated November 3 and December 10,

9

2004, claim first publication dates of the compilation website of January 2, 2003, and June 5, 2002, respectively. The registration dates, therefore, are well within the five year window set forth in 17 U.S.C. § 410(c). While the Defendants contest some of the course descriptions that appear on the Plaintiffs' copyrighted website, they have submitted no evidence to contest that Plaintiff AGI is not entitled to a presumption of validity with respect to its copyrights claimed in this lawsuit. See e.g., Fritz v. Arthur D. Little, Inc., 944 F. Supp. 95, 99 n.2 (D.Mass 1996) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.... [The plaintiff's] certificates of registration *for the materials he claims were infringed* all seem to have been made within this statutory period." [Citation omitted; emphasis added; internal quotation marks omitted.]).

Moreover, with respect to the course descriptions that the Defendants claim are similar to that which appeared in the SSI Infringing Website as early as 1997, Plaintiff AGI disputes that the use of any similar materials by SSI constitutes a publication. Nevertheless, even if the Court were construe the Defendants' prior misappropriation of the materials to constitute a publication, courts often exercise their discretion to afford a *prima facie* presumption even to certificates issued over five years after publication. See 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 12.11 (2005), citing, *inter alia,* Silverman v. CBS, Inc., 632 F. Supp. 1344 (S.D.N.Y. 1986), aff'd in part, vacated in part, 870 F.2d 40 (2d Cir. 1989) (in absence of rebutting evidence, according presumption to 1985 registration of 1948 common law work). Further, if the Court finds that it is unclear what elements of the properly registered copyright AGI is claiming have been infringed, the remedy is not to require AGI to present affirmative evidence to support its ownership claims, rather, the Court may simply require AGI to specify the protectable elements of

its website before the issuance of any enforceable injunction. See Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir.), cert denied, 522 U.S. 908 (1997) (reversing district court's grant of summary judgment on grounds that plaintiff's copyright was invalid because of vague definition in registration and technical infirmities).

B.  **SSI Did Not Have An Implied License And Even If It Did, This License Was Revoked Prior to the Infringement in 2004 And The Scope Of The License Would Never Have Extended To Acquired**

Implied licenses in copyright law are found only in narrow circumstances. See John G. Danielson, Inc. v. Winchester-Conant Props., Inc., 322 F.3d 26, 40 (1st Cir. 2003). The burden of proving the existence of such a license is on the party claiming its protection, the licensee. See id.

An implied license arises where the following three elements are met: (1) the licensee requests the creation of a work; (2) the licensor creates the work and delivers it to the licensee; and (3) the licensor intends that the licensee copy and distribute the work. See John G. Danielson, Inc. v. Winchester-Conant Props., Inc., supra, 322 F.3d at 41, citing Effects Assoc., Inc., v. Cohen, 908 F.2d 555, 558-59 (9th Cir. 1990); see also Atkins v. Fischer, 356 U.S. App. D.C. 403, 331 F.3d 988, 991-92 (D.C. Cir. 2003). "The touchstone for finding an implied license, according to this framework, is intent." Id.

Following this framework, the Defendants have failed to meet their burden of proving the existence of an implied license as to *all three elements*. First, the Defendants have not proffered any evidence to demonstrate that SSI ever requested AGI or Cyber to create the course descriptions. The evidence shows that AGI independently created all works for itself and, at best, the descriptions were merely used by SSI to promote AGI's services to AGI's benefit. Second, the Defendants' have proffered no evidence to support that AGI delivered the materials to SSI. Finally, SSI has failed to proffer evidence that AGI intended to grant to SSI the unfettered right to copy and distribute the

11

course materials. Even if the Court found that AGI had an intent to permit SSI to copy and distribute some related materials prior to 2003, the undisputed fact is that SSI took the materials down from its website for over a year, from Fall of 2003 through the summer of 2004, is indicative of AGI's intent to sever their reseller relationship and any implied permission that had existed at the time. Furthermore, the Defendants cannot argue that AGI ever manifested an intent to allow SSI to reasonably believe that AGI would permit its competitor, Acquired, to use the materials on its own competitive website.

Thus, the Defendants' argument that lack of objection by the Plaintiffs to the Defendants' use of the materials constitutes an implied license that is not cancelable and extends following termination in 2003 is wholly without merit and does not create a genuine issue of materials fact that they acted with permission in 2004.

**C.    The Plaintiff's Claim For Infringement Of Its Website Has Been Properly Brought Within Statute Of Limitations**

The Defendants' straw man argument continues with its claim that the Plaintiffs are barred by the statute of limitations. Clearly, the Plaintiffs' cause of action for copyright infringement arises out of the Defendants' acts that occurred in 2004. In an effort to shift the focus away from what occurred in 2004, however, the Defendants attempt, once again, to steer the Court toward SSI's use of some of AGI's copyrighted materials in 1997, which is *irrelevant* for the purposes of this action and in no way bars the Plaintiffs from bringing their claim.

If infringement occurs within three years prior to filing of a lawsuit, the action will not be barred *even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously*. See 3 Nimmer § 12.05[A] N.6, citing, *inter alia*, Harry Alter Co. v. A. E. Borden Co., 121 F. Supp. 941 (D.Mass 1954). Thus, "[a] party does not waive the

12

right to sue for infringements that accrue within three years of filing by not asserting related claims that accrued beyond three years." Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 202 (4th Cir., 1997); see also Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 797 (4th Cir. 2001) ("Although [Defendants'] liability for at least some of the alleged acts of infringement appears to have been shielded by the statute of limitations, the district court ruled that this fact barred even claims based on infringing activity shown to have occurred within the limitations period.  In doing so, it assumed that Defendant's 'actions regarding [Plaintiffs] comprise one act of infringement.'  This assumption, however, is contrary to our holding in Hotaling, see 118 F.3d at 202, in which we made clear that *each sale or rental should be considered separately under an infringement analysis*." [Emphasis added.])

      Here, AGI instructed SSI to remove all course descriptions from its website in the Fall of 2003, and SSI complied and inactivated the link to the Education portion of its website.  Just over a year later, however, SSI realigned with AGI's new competitor, Acquired, which was formed by recently departed AGI associates, and both companies posted AGI's proprietary materials on their respective websites.  Notably, both the Acquired and SSI Infringing Website listed, *for the first time,* at least one new course title that was substantially similar to a new custom course offered on the AGI website, which was modeled after a book co-authored by Christopher Smith.

      Thus, the crux of the Plaintiffs' claim of copyright infringement arises from the Defendants' acts of infringement that occurred in the summer of 2004.  Specifically, both SSI and Acquired copied verbatim, substantial portions of the Plaintiff AGI's copyrighted website and posted the Plaintiffs' copyrighted materials on their respective websites without permission in 2004.  The claim for this infringement began to accrue shortly thereafter when Plaintiff Smith discovered what had occurred.  As such, the infringement claim, having been timely brought in December of 2004 and

well within the three-year period pursuant to 17 U.S.C. §507(b), is properly before the Court and the Defendants' arguments to the contrary are without merit.

**D.     Defendants Cannot Assert The Defenses Of Laches, Waiver And Equitable Estoppel**

As with the Defendants' argument that the Plaintiffs copyright claim is barred by the Statute of Limitations, *all of the Defendants' equitable defenses are hinged on the false premise that the Plaintiffs' copyright cause of action stems from the parties' conduct prior to 2002, and ignore the Defendants' acts of Copyright Infringement that occurred in the summer of 2004.* For that reason, and for the further reasons set forth below, each of the Plaintiffs' affirmative defenses must fail.

**1.     Laches**

Having demonstrated that the Plaintiffs' cause of action is not barred by the Statute of Limitations in the Copyright Act, the Defendants' last ditch effort in raising equitable defenses such as laches, must fail. In fact, there is a legitimate question as to whether the defense of laches is even cognizable in the copyright realm. See 3 Nimmer §12.06. At least one circuit has precluded an independent laches defense to copyright infringement. See Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 797 (4th Cir. 2001); but see Danjaq LLC v. Sony Corporation, 263 F.3d 942, 954 (9th Cir. 2001).

Nevertheless, to demonstrate laches, the "defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." Danjaq LLC v. Sony Corporation, supra, 263 F.3d at 951. As previously stated, the infringement claim at issue arises out of the Defendants' acts of infringement that they committed in 2004. It would be preposterous for the Defendants to argue that the Complaint, which was filed mere months after the acts of infringement occurred, constituted an unreasonable delay. See e.g., Roulo v. Russ Berrie & Co., 886 F.2d 931, 942 (7th Cir. 1989) cert. denied, 493 U.S. 1075 (1990) ("A two year delay in filing an action following knowledge of the

infringement has rarely been held sufficient to constitute laches."). Moreover, with respect to the prejudice prong, the Defendants' argument that they were "lulled into a false sense of security" by the years of SSI's prior use of AGI's copyrighted materials is insufficient. A mere "false sense of security" alone does not give rise to laches. See 3 Nimmer §12.06[B][3], citing, Russell v. Price, 612 F.2d 1123, 1126 (9th Cir. 1979), cert. denied, Drebin v. Russell, 446 U.S. 952 (1980) ("Defendants cite no case in which a false sense of security alone has been enough to bar an otherwise proper claim."). The Defendants' failure to allege any prejudice is fatal to their laches defense and summary judgment must be denied.

  2.  **Waiver**

In copyright, waiver or abandonment of copyright occurs only if there is an intent by the copyright proprietor to surrender rights in its work. See A&M Records v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001). Here, the evidence shows that from the inception of the business relationship between SSI and Cyber, the Plaintiffs outwardly manifested their intent to protect their copyrighted materials. For example, the first agreement between the companies contained a termination clause that expressly authorized Cyber to terminate the agreement if, inter alia, SSI used Cyber copyrighted material "without the written permission of CYBER." (F4.)

Moreover, waiving some rights is not the same as waiving all rights. See Micro Star v. Formgen Inc., 154 F.3d 1107, 1114 (9th Cir. 1998). The Defendants have not, and cannot show that the Plaintiffs ever manifested an intent to permit SSI to authorize the competing company, Acquired, to use the Plaintiffs' copyrighted works in direct competition with Plaintiff AGI. *SSI never even contacted AGI to request permission to do this*. The Defendants, therefore, cannot rely on the doctrine of waiver to support SSI's claim that it could grant such permission to Acquired.

  3.  **Estoppel**

"Although there is no on-point circuit authority articulating the elements of estoppel as a defense to a copyright infringement allegation, a consensus has developed that a copyright defendant must prove four conjunctive elements to establish estoppel in such cases:

(1) the plaintiff must know the facts of the defendant's infringing conduct;

(2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended;

(3) the defendant must be ignorant of the true facts; and

(4) the defendant must rely on the plaintiff's conduct to its injury." Carson v. Dynegy, Inc., 344 F.3d 446, 453 (5th Cir. 2003) citing, 4 Nimmer § 13.07 (2002).

In addition to the reasons set forth above, the Defendants' defense of estoppel fails first and foremost because the infringing conduct, for which the action was commenced, did not take place until the summer of 2004. At least with respect to Defendant Acquired, therefore, the Plaintiffs could not have been aware of their infringing conduct until this point. Additionally, the evidence of what the Defendants euphemistically refer to as a "temporary period of inactivity" counters any argument by the Defendants that they were ignorant of the true facts, namely, that SSI was no longer permitted to post AGI's content on its website. Thus, the argument must be rejected.

E.     **Plaintiffs' Claim For Attorney's Fees and Statutory Damages**

The Defendants' motion to dismiss the Plaintiff's claim for statutory damages and attorney's fees is unfounded and premature. As noted in the Prayer for Relief section of the Complaint, the Plaintiffs are seeking, inter alia, the award of "(i) actual damages and profits derived by defendant as a result of their infringing activities, pursuant to 17 U.S.C.§ 504(b), or (ii) *to the extent available*, statutory damages in the maximum amount of $150,000 with respect to each of plaintiffs' copyrighted

16

works, pursuant to 17 U.S.C. § 504(c) .... [and] awarding plaintiffs their cost of suit and attorneys' fees in this action .... " (Emphasis added.). (Complaint at p. 9, "Prayer"(b) and (f).)

While it is true that 17 U.S.C. § 412 precludes a plaintiff from electing statutory damages or receive attorney's fees if any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work, the Defendants incorrectly argue that the alleged infringement took place before the Plaintiffs secured their copyrights.  Specifically, one of the copyrighted works at issue in this case is a book that Plaintiff Chris Smith co-authored, <u>InDesign for QuarkXPress Users</u>. <u>See</u> Complaint ¶ 12.  This book was first published on April 17, 2003 with an effective registration date of June 3, 2003.  <u>See</u> Complaint, Exhibit C.  The alleged infringement took place in the summer of 2004.  Accordingly, statutory damages and attorneys' fees *are* available to Plaintiff Smith for infringement of this work.

F.      **<u>Judeann Stipe Can Be Held Liable For Copyright Infringement</u>**

Defendants' motion for summary judgment as to Judeann Stipe's liability for copyright infringement is unfounded because issues of fact remain as to her liability.  The Defendants' argument with regard to Stipe's liability seeks to put the Plaintiffs between a proverbial rock and a hard place.  On the one hand, if the Plaintiffs had moved for summary judgment as to Stipe's liability for copyright infringement, Defendants would have argued that genuine issues of material fact remain and requested denial on that ground.  On the other hand, now that the Plaintiffs have carefully tailored a motion for *partial* summary judgment to issues for which summary judgment is clearly merited, Defendants complain that the remainder of the Plaintiffs' claims are brought in bad faith with the purpose to harass and intimidate.   Even a cursory review of this case, however, reveals that the Defendants' arguments have no basis in law or fact.

With regard to the law, Defendants' assertion that Stipe is shielded from liability because she is not an officer or director ignores a basic tenet of copyright law that "copyright infringement is in the nature of a tort, for which *all who participate in the infringement are jointly and severally liable*." (Emphasis added.)  Screen Gems--Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552, 554 (2d Cir. 1972).  Thus, where the copyright owner can show as damages its probable losses resulting from an infringement, it is clear, on familiar principles of tort liability, that all persons who unite in the infringement are jointly and severally liable for the damages resulting therefrom.  See Sammons v. Colonial Press, Inc., 126 F.2d 341, 345 (1st Cir. 1942).  Accordingly, liability still may be found in an employee who is neither an officer nor director who was involved in the infringement.  See e.g., Southern Mississippi Planning & Dev. Dist., Inc. v. Robertson, 660 F. Supp. 1057, 1063 (D. Miss. 1986) ("The individual Counter-defendants' assertion of the doctrine of respondeat superior again does not excuse them in their individual capacities for any alleged wrongful infringing activity committed by them in the scope of their employment.  Accordingly, the Court denies their Motion for Summary Judgment on this count."); see also Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer." [Internal quotation marks omitted.]).

With regard to the facts of this case, the Defendants' conclusory assertion that Stipe "had no role in any of the allegedly infringing activities set forth in the Complaint or Plaintiffs' summary judgment motion" is without merit.  The Complaint alleges, inter alia, that Stipe, a former AGI employee, was among the Defendants who operated the Acquired Infringing Website and copied the Plaintiffs' proprietary material without permission. (Complaint ¶¶ 13-16.)  Among the evidence gathered thus far by the Plaintiffs are emails between Stipe, Novosat and Edwards involving the

18

removal of infringing materials from the Acquired Infringing Website. (F4.) Further, just prior to when the infringement occurred in July and August of 2004, Stipe accessed, without permission, AGI's secured database servers located in Woburn, MA. (F43-45.) Clearly, Stipe is a central figure who was involved in the infringing activity. Notably, a deposition of Ms. Stipe is currently scheduled in early September. Further, Counts IV-VII of the Amended Complaint are directed to, inter alia, Stipe's misuse of AGI's proprietary information. (Amended Complaint ¶¶36-72.) Accordingly, summary judgment as to her liability must be denied because genuine issues of material fact remain as to the extent of her involvement and discovery is not yet complete.

**G.      Plaintiffs' Common Law Unfair Competition Claim Is Not Preempted**

Pursuant to the "extra element" test, "when unfair competition and unfair and deceptive trade practices claims require proof of an extra element *such as likelihood of consumer confusion, misrepresentation,* or deception, the claims survive preemption." (Emphasis added.) Rubin v. Brooks/Cole Pub. Co., 836 F. Supp. 909, 923-24 (D. Mass. 1993) citing, *inter alia*, 1 Nimmer § 1.01[B][1][e], at 1-21 ("crucial to liability under a deceptive trade practices cause of action is the element of misrepresentation or deception, which is no part of a cause of action for copyright infringement.... There is [also] no preemption of ... the state law of unfair competition of the 'passing off' variety.").

Here, the Common Law Unfair Competition count in the Complaint alleges that the Defendants have, inter alia, *embarked on a course of conduct to compete with Plaintiffs by misdirecting customers* and engaged in a scheme of unfair competition by misappropriating Plaintiffs' proprietary content in undertaking a venture to compete with Plaintiffs. See Complaint ¶ 29. To the extent that this claim requires the elements of misrepresentation and misdirection of customers, the "extra element" test is satisfied and the claim is not preempted. See id., at 924

19

("Although the Court is aware of no case which has addressed preemption by the Copyright Act of a state law claim based upon improper representation of permission, the Court derives guidance from cases considering preemption of unfair competition and deceptive trade practices claims of the "passing off" variety.  In these cases, the plaintiffs' claims are based upon mislabeling or misrepresentation by the defendant which fools consumers into thinking that the defendant's product (which might also be an infringing product) is made or authorized by the plaintiff.... Courts have determined that such claims are not preempted by the Copyright Act based as they are upon an element of misrepresentation and deceit beyond mere reproduction.").  Moreover, the very heart of the Defendants' defense is that they had authorization to reproduce infringing materials on their respective websites.  See id. ("the Court rules that [the plaintiff's] chapter 93A claim survives preemption based upon [defendants'] representation that the [the copyrighted work] was reprinted with permission.").  Accordingly, the "extra element" test is satisfied and the Cross Motion must be denied.

### III.  CONCLUSION

For all of the foregoing reasons, plaintiffs request that the Court deny Defendants' Cross-Motion for Summary Judgment.

|  |  |
|---|---|
|  | AMERICAN GRAPHICS  INSTITUTE, INC., and CHRISTOPHER SMITH |
|  | By their attorneys, |
| Dated: August 29, 2005 | /s/ Giovanna H. Fessenden<br>John L. DuPré   (BBO No. 549659)<br>Giovanna H. Fessenden (BBO No. 654681)<br>Hamilton, Brook, Smith & Reynolds, P.C.<br>530 Virginia Road<br>P.O. Box 9133<br>Concord, Massachusetts 01742-9133<br>Telephone:  (978) 341-0036 |
| 571467 | Facsimile:   (978) 341-0136 |